**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Kevin Hokenstrom

   v.                                    Case No. 14-cv-557-SM

N.H. Department of Corrections,
William Wrenn, Robert MacLeod,
Helen Hanks, Denise Rancourt,
Ryan Landry, Bernadette Campbell,
Christopher Kench, and Jeffrey Fetter

**REPORT AND RECOMMENDATION**

Under the aegis of 42 U.S.C. § 1983, pro se plaintiff Kevin
Hokenstrom has sued the New Hampshire Department of Corrections
("DOC") and several current and former DOC employees.  He claims
that while he was incarcerated by the DOC in the Northern New
Hampshire Correctional Facility ("NCF"), defendants violated his
rights under the Eighth and Fourteenth Amendments to the United
States Constitution, and under Title II of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-34.  He also
asserts a state-law claim for negligence.  Before me for a
report and recommendation is a motion for summary judgment filed
by all of the named defendants other than William Wrenn.
Hokenstrom objects.  For the reasons that follow, defendants'
motion for summary judgment should be granted.

### Summary Judgment Standard

"Summary judgment is appropriate as long as the record reflects no genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." United States v. McNicol, 829 F.3d 77, 80 (1st Cir. 2016) (citing Fed. R. Civ. P. 56(a); Schiffmann v. United States, 811 F.3d 519, 524 (1st Cir. 2016)).  When ruling on a motion for summary judgment, the court must "take the facts and all reasonable inferences therefrom in the light most hospitable to the nonmoving party."  McNicol, 829 F.3d at 80.  To defeat a summary-judgment motion, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe.'"  Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)).

### Background

The facts recited in this section are either undisputed or are drawn from Hokenstrom's pleadings.

Hokenstrom has been in the custody of the DOC since February of 2001.  He has several physical impairments including an unusually short right leg, an unusually wide left foot, and a

2

neuroma in his left foot.[1]

At all times relevant to plaintiff's claims, i.e., since December 12, 2011, see doc. nos. 44 and 47, the DOC has provided Hokenstrom with an above-the-knee prosthesis for his right leg. His prosthesis requires periodic maintenance and repair, which often must be performed off site.  From February 29, 2012, through March 27, 2012, Hokenstrom was without a prosthesis because his was off site for service, and the servicer took about a month to send a loaner leg.  Similarly, from April 16, 2014, through September 18, 2014, Hokenstrom was without his prosthesis because it was off site for service.

From 2004 through 2013, the DOC provided Hokenstrom with sneakers, rather than the heeled boots it issued to other inmates.  Hokenstrom says that the sneakers were necessary, because he requires a flat-soled shoe for his prosthetic leg and because he needs wider shoes than the standard-issue DOC footwear, due to his wide foot and his neuroma.  In 2013, Ryan Landry, a nursing coordinator with the DOC's Department of

---

[1] "Neuroma" is a "[g]eneral term for any neoplasm derived from cells of the nervous system."  Stedman's Medical Dictionary 1311 (28th ed. 2006).  A "neoplasm" is "[a]n abnormal tissue that grows by cellular proliferation more rapidly than normal and continues to grow after the stimuli that initiated the new growth cease."  Id. at 1288.

Medical and Forensic Services, attempted to place an order for

new sneakers for Hokenstrom.  However, Dr. Jeffrey Fetter, the

Chief Medical Officer for the New Hampshire State Prison,

reviewed Hokenstrom's medical records and determined that the

sneakers which the DOC had been providing him were not a medical

necessity.  Thereafter, Hokenstrom was not provided sneakers by

the DOC, but was told that he could purchase sneakers from the

prison canteen.

During the course of Hokenstrom's incarceration, "the DOC

employed a three-level procedure for handling inmate grievances

'concerning any condition of confinement.'"  Gray v. Perkins,

No. 14-cv-386-PB, 2016 WL 5108030, at *3 (D.N.H. Sept. 20, 2016)

(quoting DOC Policy and Procedure Directive ("PPD")

1.16(III)(E)).  Judge Barbadoro described the grievance

procedure this way:

> To complete the first level of the DOC's
> grievance process, an inmate utilizes an Inmate
> Request Slip ("IRS") "addressed to the lowest level
> staff person with the authority to address the issue
> raised."  PPD 1.16(IV)(A)(1).  "A request slip
> regarding any issue must be received within 30
> calendar days of the date on which the event
> complained of occurs."  Id.  An inmate dissatisfied
> with the response to an IRS may, within thirty days of
> the date of that response, direct a Grievance Form to
> the Warden or Director of the DOC facility in which
> the inmate is then housed.  PPD 1.16(IV)(B).  An
> inmate dissatisfied with the Warden's response to his
> grievance, within thirty days of the denial of his

grievance to the Warden, may appeal that denial to the
DOC Commissioner.  PPD 1.16(IV)(C)(1).  The timeframes
set forth in PPD 1.16, and the use of appropriate
forms, at each level of the DOC grievance process, are
mandatory.  PPD [1.16](IV)(E)&(F).

Id. at *3 (citations to the record omitted).


## Discussion

On preliminary review, the court allowed Hokenstrom to

serve claims for: (1) violating his Eighth Amendment right to be

free from cruel and unusual punishment by depriving him of a

prosthesis on two occasions; (2) violating his Fourteenth

Amendment right to equal protection by making him pay for his

sneakers while it provided all other inmates with properly

fitting footwear for free; (3) violating the ADA by excluding

him from various prison activities, facilities, and

opportunities, on account of his disabilities, when he was

without the use of a prosthesis; and (4) negligence, under state

law.  Defendants move for summary judgment under multiple

theories.  They are entitled to judgment as a matter of law on

plaintiff's three federal claims on one of the grounds they

identify: Hokenstrom's failure to exhaust the administrative

remedies available to him before he filed suit.  And, defendants

are entitled to judgment as a matter of law on plaintiff's

state-law negligence claim because he has disavowed it.

**A.    Plaintiff's Federal Claims**

Defendants argue that they are entitled to judgment as a matter of law on all three of plaintiff's federal claims because he has not satisfied the exhaustion requirement imposed by the Prison Litigation Reform Act of 1995 ("PLRA").  They are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). A prisoner seeking to exhaust his administrative remedies under the PLRA must complete the administrative review process that is available at his correctional facility in accordance with the procedural rules of that facility.  See Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Moreover, a prisoner must exhaust his administrative remedies before filing suit, and if he fails to do so, his unexhausted claim(s) must be dismissed.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

To prevail on the affirmative defense of failure to exhaust, at summary judgment, "the defendant must show that no reasonable jury could find that [the plaintiff] exhausted the administrative remedies available to him before commencing [his] action."  Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *3 (D.N.H. Jan. 20, 2016).  However, if the defendant carries

> the initial burden of showing that plaintiff failed to exhaust all of his generally available administrative remedies . . . "the burden shifts to the prisoner to come forward with evidence showing that there something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."

Santiago v. N.H. Dep't of Corr., Comm'r, No. 14-cv-100-JL, 2015 WL 5097782, at *3 (D.N.H. Aug. 27, 2015) (quoting Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014)).

It is undisputed that Hokenstrom has filed many inmate request slips pertaining to: (1) the time he has spent without a prosthesis, which is the factual predicate for his Eighth Amendment and ADA claims; and (2) the DOC's decision to stop providing him with free sneakers, which is the factual predicate for his equal protection claim.  However, defendants argue, with record support, that plaintiff never completed the administrative review process outlined in PPD 1.16 by pursuing either a prosthesis complaint or a footwear complaint through

all three levels of the DOC grievance procedure.  For his part,

plaintiff has not produced evidence to show that he ever

completed the procedure outlined in PPD 1.16.  Rather, he

appears to concede that he did not follow the letter of PPD

1.16, but argues that he was not obligated to do so because: (1)

the administrative structure of the DOC renders PPD 1.16

inapplicable to the kind of complaints he was making, which

pertained to medical matters over which the Warden has little

say; (2) the inapplicability of PPD 1.16 to his complaints made

that remedy unavailable to him; (3) the steps he did take to

grieve his prosthesis and footwear complaints were sufficient to

satisfy the intent of PPD 1.16.

For the legal theory underlying his argument, plaintiff

relies upon the U.S. Supreme Court's recent decision in Ross.

In Ross, the Supreme Court rejected "the Fourth Circuit's

adoption of a 'special circumstances' exception to [the PLRA's

exhaustion] mandate," 136 S. Ct. at 1856, but went on to

explain:

> [O]ur rejection of the Fourth Circuit's "special
> circumstances" exception does not end this case —
> because the PLRA contains its own, textual exception
> to mandatory exhaustion.  Under § 1997e(a), the
> exhaustion requirement hinges on the "availab[ility]"
> of administrative remedies: An inmate, that is, must
> exhaust available remedies, but need not exhaust
> unavailable ones.

Id. at 1858.[2]   The court went on to "note . . . three kinds of

circumstances in which an administrative remedy, although

officially on the books, is not capable of use to obtain

relief."   Id. at 1859.   Plaintiff contends that two of the

circumstances identified by the Ross Court apply to his case.

Under the first circumstance, "an administrative procedure

is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end – with

officers unable or consistently unwilling to provide any relief

to aggrieved inmates."   Ross, 136 S. Ct. at 1859 (citing Booth

v. Churner, 532 U.S. 731, 736 (2001)).   The court elaborated:

> Suppose, for example, that a prison handbook directs
> inmates to submit their grievances to a particular
> administrative office — but in practice that office
> disclaims the capacity to consider those petitions.
> The procedure is not then "capable of use" for the
> pertinent purpose.   In Booth's words: "[S]ome redress
> for a wrong is presupposed by the statute's
> requirement" of an "available" remedy; "where the
> relevant administrative procedure lacks authority to
> provide any relief," the inmate has "nothing to
> exhaust."   Id., at 736, and n.4.   So too if
> administrative officials have apparent authority, but
> decline ever to exercise it.   Once again: "[T]he
> modifier 'available' requires the possibility of some
> relief."   Id., at 738.   When the facts on the ground

---

[2] The "special circumstances" exception that the Supreme
Court struck down in Ross was drawn by the Fourth Circuit from
the Second Circuit's decision in Giano v. Goord, 380 F.3d 670,
676 (2d Cir. 2004).

> demonstrate that no such potential exists, the inmate
> has no obligation to exhaust the remedy.

Id. (parallel citations omitted).

Here, plaintiff does not claim, and has produced no

evidence to show, that any DOC official identified in PPD 1.16

ever: (1) disclaimed the capacity to consider grievances

pertaining to his lack of a prosthesis or the decision to make

him pay for his sneakers; or (2) declined to exercise his or her

authority to consider a grievance arising from his prosthesis or

footwear complaints.  In other words, plaintiff has identified

no "facts on the ground" that rendered the PPD 1.16 grievance

procedure unavailable to him.  Thus, he has failed to establish

the first unavailability circumstance identified by the Ross

Court.

Instead of identifying recalcitrant DOC officials,

plaintiff argues that because the Warden is not a part of the

"chain of command" for the DOC's Department of Medical and

Forensic Services, PPD 1.16 does not apply to his grievances

about prosthesis and footwear issues.  But there is a big

difference between the Warden or the Commissioner disclaiming

the capacity to consider grievances, or declining to exercise

their authority to do so, and what we have here — plaintiff's

untested belief that the Warden lacked the authority to provide

10

relief on his prosthesis or footwear complaints.  Plaintiff's

belief that the conditions on which he bases his federal claims

lie outside the Warden's authority, absent any action by the

Warden that would justify that belief, did not relieve plaintiff

of the obligation to follow the grievance procedure set out in

PPD 1.16.  See Santiago, 2015 WL 5097782, at *4 ("a prisoner's

belief that exhaustion will be futile [is not] sufficient to

excuse exhaustion of the prison's available administrative

remedies, as there is no futility exception to the PLRA

exhaustion requirement") (internal quotation marks and citation

omitted).

Plaintiff also argues that the facts of this case fall

under a second circumstance described by the Ross Court: "an

administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use."  Ross, 136 S. Ct. at

1959.  Again, the Supreme Court elaborated:

> In this situation, some mechanism exists to provide
> relief, but no ordinary prisoner can discern or
> navigate it.  As the Solicitor General put the point:
> When rules are "so confusing that . . . no reasonable
> prisoner can use them," then "they're no longer
> available."  . . .  When an administrative process is
> susceptible of multiple reasonable interpretations,
> Congress has determined that the inmate should err on
> the side of exhaustion.  But when a remedy is, in
> Judge Carnes's phrasing, essentially "unknowable" — so
> that no ordinary prisoner can make sense of what it
> demands — then it is also unavailable.  See Goebert v.

> Lee County, 510 F.3d 1312, 1323 (C.A. 11 2007); Turner
> v. Burnside, 541 F.3d 1077, 1084 (C.A. 11 2008)
> ("Remedies that rational inmates cannot be expected to
> use are not capable of accomplishing their purposes
> and so are not available").  Accordingly, exhaustion
> is not required.

Id. at 1859-60 (citation to the record omitted).

Plaintiff bases his invocation of the second Ross

circumstance on responses he received to inmate request slips

that he directed to Sue Young and to the Warden of the NCF,

Michelle Goings.  He submitted both of those slips on the same

day in September of 2016, more than 20 months after he filed

this action.  Be that as it may, plaintiff asked both Young and

Warden Goings to describe the chain command as it relates to

medical services provided to inmates by the DOC.  In his

surreply, plaintiff reports the following response from Young:

> I am not aware of a published chain of command
> specifically for Medical.  The Nurse Manager @ NCF is
> supervised by Carlene Ferrer (sp?) who reports
> directly to Paula Mattis.

Doc. no. 61 ¶ 6; see also doc. no. 61-3.  Then he reports this

response from Warden Goings:

> There are steps inbetween the Nurse Coordinator and
> the Director of Medical & Forensics.  The Director of
> M&F has 2 Deputy Directors, one for medical & one for
> behavioral.  There is also a Director of Nursing that
> reports to Director Mattis.

Id. ¶ 7; see also doc. no. 61-4.  Based on the foregoing,

plaintiff concludes:

> Apparently, the chain of command to follow for
> grievance purposes depends on who is asked, which is
> all in direct contradiction to P.P.D. 1.16.
> Therefore, in light of the above mentioned facts,
> exhaustion is not required pursuant to Ross v. Blake
> (supra).

Id. ¶ 8.  The court does not agree.

The problem with plaintiff's argument that it based upon an

unsubstantiated belief that complaints about medical issues are

subject to a different grievance procedure than complaints about

other conditions of confinement.  They are not.  PPD 1.16

expressly states that its purpose is "[t]o provide an

administrative process through which inmates/residents seek

formal review of . . . issue[s] related to any aspect of their

confinement."  Defs.' Mem. of Law, Ex. A1 (doc. no. 48-3), at 1

(emphasis added).  PPD 1.16 further provides that "[i]ssues

concerning any condition of confinement can be grieved by any

person under departmental supervision."  Id. at 2 (emphasis

added).  Because PPD 1.16 applies to all inmate complaints,

including complaints about prison medical services, and because

PPD 1.16 cannot fairly be described as opaque, confusing, or

essentially unknowable, plaintiff's inability to acquire a

satisfactory description of the chain of command for DOC medical

services from Young and Warden Goings – more than a year after

the time had passed for him to grieve the issues underlying his

federal claims – does nothing to pull this case within the ambit

of the second Ross circumstance and does not give him an excuse

for failing to exhaust his administrative remedies.

To summarize, before he filed this action, plaintiff had

not exhausted the administrative remedies available to him for

seeking a remedy for the conditions underlying his three federal

claims.  He had no excuse for failing to do so.  Accordingly,

his federal claims must be dismissed, see Medina-Claudio, 292

F.3d at 36, which entitles defendants to judgment as a matter of

law on plaintiff's three federal claims.

## B.   Plaintiff's Negligence Claim

In its order on preliminary review, the court found "that

Hokenstrom's allegations of Defendants' negligence give rise to

claims under state law."  Order (doc. no. 10) 4.  Understanding

plaintiff's claim to be one for medical negligence, defendants

move for summary judgment on grounds that, pursuant to N.H. Rev.

Stat. Ann. ("RSA") § 507-E:2, I, plaintiff's failure to disclose

an expert witness is fatal to his claim.  Plaintiff counters:

> Defendants erroneously conclude [that] Petitioner's
> state law claims lie in Medical Negligence/Injury
> pursuant to RSA 507-E.  This is not the case.
> Petitioners state law claims apply to statutorily

> grounded property interests entitling him to footwear
> and lost wages.

Pl.'s Obj. (doc. no. 53) ¶ 128.  The state-law claim the court

recognized in its order on preliminary review was a claim for

negligence.  Plaintiff disavows making a claim for negligence.

Accordingly, defendants are entitled to judgment as a matter of

law on the state-law negligence claim the court identified in

its order on preliminary review.  If plaintiff wishes to pursue

a claim based on a state-law cause of action other than

negligence, he is free to do so in an appropriate forum.


## Conclusion

For the reasons detailed above, defendants' motion for

summary judgment, document no. 48, should be granted.  Having

reached that conclusion, the court notes that defendant William

Wrenn was not listed in document no. 48 as moving for summary

judgment.  That omission appears to have been inadvertent but,

in any event, as the court can discern no reason why the

analysis in this Report and Recommendation would not apply with

equal force to the claims against Wrenn, the district judge

should grant summary judgment to all defendants, and direct the

clerk of the court to close this case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).


_____
Andrea K. Johnstone
United States Magistrate Judge


November 8, 2016

cc:  Kevin Hokenstrom, pro se
     Elizabeth Mulholland, Esq.
     Francis Charles Fredericks, Esq.
     Jonathan A. Lax, Esq.